Mr. Charles J. Cino Flagler Beach City Attorney Post Office Box 70 Flagler Beach, Florida 32136
Dear Mr. Cino:
On behalf of the Flagler Beach City Commission, you ask substantially the following questions:
1. May a municipality by city charter amend the procedures for annexing property prescribed by Chapter 171, Florida Statutes?
2. When may the city commission, on its own volition, call for a referendum on the question of contraction?
Question One
Article VIII, section 2(c), Florida Constitution, provides in pertinent part that "[m]unicipal annexation of unincorporated territory . . . and exercise of extra-territorial powers by municipalities shall be as provided by general or special law." Thus any annexation must be effected either directly by the Legislature by special law or by a municipality in accordance with the authorization and procedures provided by a general law.[1] Section 166.021, Florida Statutes, reflects this mandate. The statute in subsection (3)(a) sets forth the home rule powers of municipalities and recognizes the authority of municipalities to enact legislation on any subject matter upon which the Legislature may act except "[t]he subjects of annexation, merger, and exercise of extraterritorial power, which require general or special law pursuant tos. 2(c), Art. VIII of the State Constitution." (e.s.)
The provisions of general law governing municipal annexation are set forth in Chapter 171, Florida Statutes, the Municipal Annexation or Contraction Act, which was enacted "to set forth procedures for adjusting the boundaries of municipalities through annexations or contractions of corporate limits and to set forth criteria for determining when annexations or contractions may take place so as to . . . [e]stablish uniform legislative standards throughout the state for the adjustment of municipal boundaries."[2] To accomplish this purpose, the act provides general law standards and procedures for adjusting the boundaries of Florida municipalities and acts as a preemption to the state regarding legislation in this area.[3]
The courts and this office have stated that the power to extend municipal boundaries must be exercised in strict accordance with the statutes conferring such authority. For example, in SCA Services of Florida, Inc.v. City of Tallahassee[4] the court construed sections 171.021 and171.022, Florida Statutes, in concluding that "it is apparent that the legislature intended to provide a clearly defined and exclusive method by which an annexation could be accomplished." (e.s.) In Attorney General Opinion 77-133 this office stated that a municipality is precluded, absent express general or special law authorization, from enacting any annexation procedures contrary to Chapter 171, Florida Statutes, regardless of whether such procedures would be less stringent or more stringent than those provided in Chapter 171. Subsequently in Attorney General 81-22 this office concluded that the municipality could annex unincorporated property only in accordance with the procedures provided in Chapter 171. Thus, this office stated that a city charter could not require an ordinance providing for the voluntary annexation of property to be submitted to a referendum on such annexation when section 171.044, Florida Statutes, providing for voluntary annexations, does not require such an approving referendum.[5]
In light of the above, I am of the opinion that a municipality may not by city charter amend the procedures for annexing property prescribed by Chapter 171, Florida Statutes. Thus, a municipality may not require an ordinance providing for a voluntary annexation to be submitted for referendum when the statute providing for voluntary annexation does not provide for such a referendum.[6]
Question Two
As discussed in Question One, Chapter 171, Florida Statutes, was enacted "to set forth procedures for adjusting the boundaries of municipalities through annexations or contractions of corporate limits and to set forth criteria for determining when annexations or contractions may take place so as to: . . . [e]stablish uniform legislative standards throughout the state for the adjustment of municipal boundaries."[7] The act provides general law standards and procedures for adjusting the boundaries of Florida municipalities and acts as a preemption to the state of such legislation. Pursuant to the act, only those areas that do not meet the criteria for annexation set forth in section 171.043, Florida Statutes, may be proposed for exclusion by municipal governing bodies.[8]
The procedures for contracting municipal boundaries are set forth in section 171.051, Florida Statutes. Pursuant to the statute, the governing body of a municipality may propose a contraction of the city's boundaries by ordinance and provide an effective date for the contraction.[9] A method is also established for qualified voters in the area desiring to be excluded from the municipality to initiate a petition for contraction.[10] A contraction ordinance must be published after its introduction to provide notice to interested persons. The notice must describe the area to be excluded and must appear in a newspaper of general circulation in the municipality at least once per week for two consecutive weeks. The description included in the notice must include a statement of findings to show that the area to be excluded fails to meet the criteria of section 171.043, Florida Statutes. In addition, the notice must include the time and place of the meeting at which the contraction ordinance will be considered and advise all parties affected that they may be heard.[11]
Section 171.051(4), Florida Statutes, provides certain procedures to be utilized at a meeting held for the purpose of considering a contraction ordinance. Under that section, if a petition is filed and signed by at least 15 percent of the qualified voters residing in the area proposed for contraction requesting a referendum on the question, the governing body of the city shall, upon verification of the sufficiency of the petition, and before passing such an ordinance, submit the question of contraction to a vote of the qualified voters of the area proposed for contraction. Subsection (5) of the statute provides that the governing body "may also call for a referendum on the question of contraction on its own volition and in the absence of a petition requesting a referendum."
Section 171.051, Florida Statutes, therefore, prescribes the procedures to be utilized in contracting a municipality's boundaries. It provides for the governing body of the municipality to directly propose an ordinance providing for contraction or to do so in response to a petition filed by 15 percent of the voters in the area desiring to be excluded. After notice of the proposed ordinance is published, the statute requires that a hearing on the proposed ordinance be held, at which time a petition may be filed by voters within the area to be contracted requesting a referendum on the issue. In the absence of such a petition being filed, the governing body of the municipality may, on its own volition, decide to call a referendum on the issue.
Thus, the statute contemplates that the governing body, after a proposed ordinance has been noticed and a hearing conducted without the affected voters petitioning for a referendum, may on its own volition hold a referendum on the issue of contraction.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] But see Art. VIII, s. 11(1)(c), (5) and (6), Fla. Const., giving Dade County jurisdiction over its municipal annexations.
[2] Section 171.021(2), Fla. Stat.
[3] See s. 171.022(2), Fla. Stat., stating that the provisions of any special act or municipal charter relating to the adjusting of municipal boundaries in effect on October 1, 1974 (the effective date of Ch. 171, Fla. Stat), are repealed except as provided in Ch. 171. And see s.171.0413(4), Fla. Stat., declaring the annexation procedure set forth in s. 171.0413 to be a uniform method for the adoption of an ordinance of annexation by the governing body of any municipality "[e]xcept as otherwise provided in this law." This office has construed the foregoing proviso as referring to s. 171.044, Fla. Stat., which provides for an alternative procedure for voluntary annexation without a referendum.See, Op. Att'y Gen. Fla. 81-22 (1981), and Capella v. City ofGainesville, 377 So.2d 658 (Fla. 1979), and s. 171.0413(4), Fla. Stat., which repeals all existing provisions of special laws which establish municipal annexation procedures except that any provisions of special laws which prohibit annexation of territory that is separated from the annexing municipality by a body of water or watercourse shall not be repealed.
[4] 418 So.2d 1148, 1150 (Fla. 1st DCA 1982). And see McGeary v. DadeCounty, 342 So.2d 549 (Fla. 3d DCA 1977).
[5] Compare s. 171.0413(2), Fla. Stat., providing for involuntary annexations and requiring that following final adoption of the ordinance of annexation by the governing body of the annexing municipality, the ordinance shall be submitted to a vote of the registered voters of the area to be annexed. The governing body of the annexing municipality may also choose to submit the ordinance of annexation to a separate vote of the registered electors of the annexing municipality.
[6] As noted supra, s. 177.044, Fla. Stat., providing for voluntary annexation does not require an approving referendum. The provisions of s. 177.044(4), Fla. Stat., are supplemental to any other procedures provided by general or special law except that the section does not apply to municipalities in counties with charters which provide an exclusive method of municipal annexation. Flagler County, however, is not a charter county and you have not advised this office of any special law relating to Flagler Beach addressing annexation.
[7] Section 171.021, Fla. Stat. And see, s. 171.022(1), Fla. Stat., stating that "[i]t is further the purpose of this act to provide viable and usable general law standards and procedures for adjusting the boundaries of municipalities in this state."
[8] Section 171.052(1), Fla. Stat. And see s. 171.043, Fla. Stat., prescribing the character of property to be annexed and requiring such things as contiguity to the municipality's boundaries, compactness, and that part or all of the area be developed for urban purposes. Thus, property which fits the requirements of s. 171.043 may not be excluded from a municipality.
[9] Section 171.051(1), Fla. Stat. And see s. 171.031(2), Fla. Stat., defining "Contraction" as "the reversion of real property within municipal boundaries to an unincorporated status."
[10] Section 171.051(2), Fla. Stat., provides that a petition of 15 percent of the qualified voters in an area desiring to be excluded from the municipal boundaries, filed with the municipal clerk, may propose such an ordinance. The municipality is required to immediately undertake a feasibility study of the proposal and within 6 months either initiate proceedings under section 171.051(1) or reject the petition, specifying the reasons for such rejection.
[11] Section 171.051(3), Fla. Stat.